UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT JAY JACKSON,

        Plaintiff,

v.

JOHN DAVIDS et al.,

        Defendants.
_____/

Case No. 1:24-cv-441

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional

Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues ICF Warden John Davids, ICF Deputy Warden Unknown Bonn, ICF Housing Unit Manager Brooke Oversmith, and ICF Custody Officers Unknown Lahr and Unknown Kotowitz in their individual and official capacities. (ECF No. 1, PageID.2-4.)

Plaintiff alleges that on November 2, 2023, while returning to his bunk from the unit television room, he stopped at the desk to ask Defendant Lahr if he had called Plaintiff. Plaintiff states that Defendant Lahr had a paper with Plaintiff's name and inmate number, and that an announcement had been made over the speaker, which Plaintiff could not hear clearly because he had been wearing headphones. (*Id.*, PageID.5-6.) Plaintiff states that Defendant Lahr responded by stating, "Bitch, what the f**k you want?" (*Id.*, PageID.6.) Defendant Lahr then got up and walked into Plaintiff's body, physically bumping into him. Defendant Lahr then told Plaintiff that he would "beat his tall bitch-ass," and "tear [Plaintiff's] bunk apart and destroy [Plaintiff's] property." (*Id.*)

Plaintiff backed away, holding his hands up in a non-threatening manner, and proceeded to his bunk. (*Id.*) Defendant Lahr followed Plaintiff, while yelling "Oh, I see your bitch ass walking away!" (*Id.*, PageID.7.) Plaintiff went to his cell and stayed on his bunk until shift change. (*Id.*) After shift change, Plaintiff spoke to Prison Counselor Santiago, who told him to stay out of Defendant Lahr's way. Plaintiff asked Defendant Santiago to contact his psychologist and his mother. (*Id.*)

On November 3, 2023, after speaking with his psychologist, Plaintiff wrote a grievance on Defendant Lahr. (*Id.*) Plaintiff subsequently began being harassed by Defendant Kotowitz, who made disparaging remarks to Plaintiff every time he walked past. Defendant Kotowitz also made signs that stated, "FREE LAHR" and posted them all over the unit. (*Id.*, PageID.7-8.)

2

Plaintiff states that he was fired from his prison job in the kitchen and was placed on unemployable status without due process. However, Plaintiff fails to allege any specific facts regarding his firing, including who was responsible for the firing, the date he was fired, or the circumstances surrounding it. (*Id.*, PageID.8.) Plaintiff was subsequently transferred to Bellamy Creek Correctional Facility (IBC), which is located across the street from ICF and, according to Plaintiff, has more enhanced restrictions in the general population. However, Plaintiff again fails to allege who made the decision to transfer him, the date of the transfer, or the circumstances surrounding the transfer. (*Id.*) Plaintiff states that an unspecified "Defendant" conducted an investigation but failed to take corrective action. (*Id.*) Plaintiff states that the events described in the complaint have caused him to suffer from anxiety, fear, loss of appetite, weight loss, and a worsening of his heart condition. (*Id.*)

Plaintiff seeks compensatory, punitive, and exemplary damages, as well as injunctive relief.

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Official Capacity / Injunctive Relief**

Initially, the Court notes that Plaintiff was transferred from ICF, where the events about which he complains occurred, to IBC. In addition, Plaintiff has since been transferred to LRF, where he currently resides. The Sixth Circuit has held that transfer to another prison facility renders moot prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule

is the premise that injunctive relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96. Therefore, Plaintiff's claims for injunctive relief are moot.

As set forth above, Plaintiff sues Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979),

5

and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

As noted above, Plaintiff's request for injunctive relief is moot; therefore, his only remaining request for relief is for damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants in their entirety.

  **B.**  **Individual Capacity**

    **1.**  **Defendants Davids, Bonn, and Oversmith**

Plaintiff claims that Defendants Davids, Bonn, and Oversmith are responsible for properly screening and training staff, that established protocol is followed, and that prisoners' constitutional rights are protected. (ECF No. 1, PageID.2-3.) Plaintiff fails to allege that any Defendant took any action against Plaintiff, other than to suggest that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's

6

subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Davids, Bonn, and Oversmith encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific

7

factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendants Davids, Bonn, and Oversmith are premised on nothing more than respondeat superior liability, his action fails to state a claim.

### 2. Defendants Lahr and Kotowitz

#### a. Eighth Amendment

Plaintiff alleges that Defendants Lahr and Kotowitz threatened him and that Defendant Lahr physically touched him in a threatening manner, which caused Plaintiff to suffer from "permanent emotional distress" and anxiety. (ECF No. 1, PageID.5.) Plaintiff characterizes Defendants' actions as creating, among other things, "a serious risk of physical harm," (*id.*, PageID.9), "harassment," (*id.*, PageID.8); and, arguably, an inappropriate use of force—"physically bumping me with his body" (*id.*, PageID.6).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Among unnecessary and wanton inflictions of pain are those that are "'totally without penological justification.'" *Id.*

##### i. Excessive Force

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v.*

8

*Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth

9

Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

However, the Court notes that the "absence of serious injury" is relevant to the Eighth Amendment inquiry. *Wilkins*, 559 U.S. at 37 (citing *Hudson*, 503 U.S. at 7).

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." [*Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)]. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted). *An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.*, at 9 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Wilkins*, 559 U.S. at 37–38 (emphasis supplied).

Plaintiff's claim relating to Lahr walking into Plaintiff falls squarely into the *Wilkins* description of allegations that "almost certainly fail[] to state a valid excessive force claim." *Id.* at 38. Plaintiff states only that "C/O Lahr . . . walks directly into my body physically bumping me with his body . . . ." (Compl., ECF No. 1, PageID.6.) Plaintiff makes no mention of any physical injury from that incident.

In light of the clear guidance of *Wilkins*, the Court concludes that the facts alleged by Plaintiff in describing the use of force and its consequences do not support an inference that the force used by Defendant Lahr against Plaintiff was excessive. Accordingly, Plaintiff has failed to state an Eighth Amendment claim based on the Lahr "bumping" Plaintiff.

        *ii.*  Harassment

To be considered an unnecessary and wanton infliction of pain, the deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S.

10

at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer

11

used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Ivey*, 832 F.2d at 955. Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff also notes that Defendant Kotowitz called Plaintiff a "snitch" in front of prisoner counselor Santiago. (ECF No. 1, PageID.8.) The Sixth Circuit Court of Appeals has recognized that "being identified as a 'snitch' in prison puts an inmate at substantial risk of assault." *Westmoreland v. Butler Cnty, Ky.*, 29 F.4th 721, 729 (6th Cir. 2022) (citing *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001). But it is not the word itself that creates the risk of harm, it is announcing that label in the presence of other prisoners. In *Westmoreland*, the court explained that "St. Clair had identified [Westmoreland] as a 'rat' in front of his cellmates . . . and informed other inmates that Westmoreland had 'told on him.'" *Id*. at 730; *see also McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341, at *3 (6th Cir. Apr. 14, 2023) (explaining that the plaintiff was put "at a substantial risk of serious harm because 'everyone' in Dorm 2-E knew he was a snitch").

Here, Plaintiff has failed to allege any facts that support the inference that Kotowitz calling Plaintiff a snitch in front of Santiago put Plaintiff at any risk of harm, much less a substantial risk. Nor has Plaintiff alleged facts that support the inference that Kotowitz was deliberately indifferent to such a risk of harm when he called Plaintiff a snitch in front of Santiago.

For all of these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Lahr and Kotowitz arising from their alleged verbal abuse.

### b. Due Process

Plaintiff makes a conclusory assertion that he was fired from his prison job in the kitchen and was placed on unemployable status without due process. Plaintiff also states that he was transferred to Bellamy Creek Correctional Facility (IBC), which is located across the street from ICF and has more enhanced restrictions in the general population. The Court notes that Plaintiff fails to allege that any of the named Defendants were involved in the loss of his job or his transfer. However, even if the named Defendants were responsible for these events, Plaintiff fails to state a due process claim.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Nor does a prisoner have a constitutional right to prison employment or a particular prison job. *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citing *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989)). Therefore, Plaintiff's due process claim will be dismissed for lack of merit.

### c. Retaliation

Plaintiff does not expressly raise a First Amendment retaliation claim in his allegations, but he does mention the word "retaliation." He states that he "continues to have anxiety attacks, and fear of retaliation . . . ." (ECF No. 1, PageID.8.) Construed liberally, it is possible that Plaintiff's allegations include some elements of such a claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

13

set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With regard to Defendant Lahr, any retaliation claim fails at the first step. Plaintiff does not allege any protected conduct that preceded Lahr's tirade. Thus, even if Lahr's actions might be deemed adverse action, Plaintiff has not alleged any facts that support the inference that Lahr's actions were motivated by protected conduct. Thus, Plaintiff fails to state a retaliation claim against Defendant Lahr.

With regard to Defendant Kotowitz, Plaintiff notes that Kotowitz verbally harassed Plaintiff after he filed the grievance against Lahr and then again after he complained about Kotowitz's verbal harassment to the ICF Inspector. (ECF No. 1, PageID.7–8.) An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, Plaintiff's grievance against Lahr and his J-pay complaint to the inspector regarding Kotowitz likely qualify as protected conduct.

Nonetheless, any retaliation claims against Kotowitz fail at the second step. The Sixth Circuit has concluded that verbal harassment and minor threats do not constitute adverse action. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003); *see also Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. Jul. 17, 2023) (stating "that verbal abuse, idle threats, and

14

nonphysical harassment of prisoners, standing alone, . . . [does not] constitute an adverse action of constitutional significance"). Thus, Plaintiff fails to state a retaliation claim against Defendant Kotowitz.

### d. State Law Claims

To the extent that Plaintiff is claiming Defendants violated state law, these claims are properly dismissed. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however,

remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims without prejudice because the Court declines to exercise supplemental jurisdiction over them. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: June 21, 2024

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge